UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

TAYLOR GORDON,

                Plaintiff,

                                **CIVIL ACTION NO.** _____

v.                                    **JURY TRIAL DEMANDED**

NIAGARA WHEATFIELD CENTRAL
SCHOOL DISTRICT,

                Defendant.

_____

<u>**COMPLAINT**</u>

      Plaintiff, **TAYLOR GORDON**, as and for her Complaint, by her undersigned attorneys, alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

      1.     Taylor Gordon ("Gordon") brings this action against Defendant Niagara Wheatfield Central School District ("NWCSD" or "the District") to remedy Defendant's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, ("Title IX") and its negligent supervision of students, including Gordon.  This action against NWCSD is for discrimination on the basis of sex.

      2.     Federal law guarantees all students the right to a public education, and it provides that they shall not be deprived of this most basic right on the basis of sex.  To that end, Title IX specifically requires that schools take steps to protect students from gender-based harassment and sexual assault that create a hostile educational environment and deprive students of educational opportunities.  New York State law further requires that schools provide adequate supervision of their students to protect them from harm.

      3.     Despite these clear legal and moral mandates, the NWCSD repeatedly and egregiously

1

failed Gordon, a student that it was required by law to educate and to protect. It deliberately and callously ignored complaints by Gordon and her mother, Leslie Camp, including complaints regarding sexual harassment and gender-based bullying, and it failed to take any meaningful action against her perpetrators or to protect her from present or future harassment. The District's shocking indifference to Gordon's suffering—which led to school-wide protests and nationwide outrage, but no systemic reforms—has caused Gordon mental and emotional injury and deprived her of equal access to education.

4. NWCSD's indifference to gender-based bullying and harassment not only affects the victims, like Gordon, but it also impacts the student body and the school community as a whole. The school district's inaction has shown students—particularly Gordon and similarly situated young women—that the very people charged with ensuring their safety in school will not protect them in their time of need.

5. NWCSD receives federal financial assistance and associated benefits. Therefore, NWCSD is subject to the requirements of Title IX (20 U.S.C. 1681-1688).

6. This action against NWCSD is for discrimination on the basis of sex.

7. NWCSD was deliberately indifferent to a pattern of sexual harassment, bullying and sexual violence perpetrated against Gordon at least since before September of 2018 and continuing through June of 2019.

8. This discriminatory environment continued to exist because of NWCSD's failure to have systems in place to prevent sexual harassment or to assure that reported incidents of sexual discrimination, bullying and harassment were promptly and effectively remediated.

9. At the end of her Junior year, on May 28, 2018, Gordon was assaulted and raped off-campus by Elias Dowdy ("Dowdy"), a male student who also attended Niagara Wheatfield High School. Dowdy assaulted the plaintiff while she was at his home.

10. Prior to the commencement of the 2018-2019 school year, Gordon's mother notified

NWCSD of the rape and provided High School Principal Michael Mann with a copy of an order of protection which was issued by the Town of Niagara Court prohibiting Dowdy from having any contact with Gordon.

11. Upon information and belief, despite being on notice of the rape and criminal prosecution, Principal Mann did not inform district officials of the nature of the pending criminal charges against Dowdy, nor did he ever put a plan in place to keep Gordon safe from her rapist. Instead, Principal Mann allowed Dowdy to attend school and participate in all school functions, regardless of the inevitable likelihood that Dowdy would often be in close contact with Gordon.

12. From the end of the 2018 school year through 2019, Gordon had to face her rapist every day as if nothing happened. She was repeatedly subjected to discrimination, harassment and bullying by Dowdy and other students. Gordon's grades and school attendance dropped as a result of the abuse, bullying and harassing conduct.

13. As a result of NWCSD's failure to appropriately protect Gordon or address the situation, Gordon was diagnosed with and has sought treatment for anxiety and severe depression, including suicidal ideation; NWCSD's action and inaction served to deprive Gordon of her right to an education, educational opportunities and associated benefits.

## THE PARTIES

14. Gordon was a female student who attended Niagara Wheatfield High School from September 2015 until graduation in June 2019. She resides in Niagara County, which is within the jurisdiction of this Court.

15. Niagara Wheatfield High School, located at 2292 Saunders Settlement Road, Sanborn, New York, was at all times relevant herein a school under the possession, control, and authority of Defendant NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT ("NWCSD" or "Defendant").

16. Defendant NWCSD was and is a municipal corporation organized and existing under the

laws of the State of New York.

## JURISDICTION & VENUE

17. The Plaintiff's legal claims are based on alleged violations of 20 U.S.C. §1681, *et seq.*, its interpreting regulations and Department of Education/Office of Civil Rights policies. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331, 1343(3) and 1343(4).

18. Venue in this action is proper pursuant to 28 U.S.C. §1391 as a substantial part of the events, acts or omissions giving rise to plaintiffs' claims occurred in this district.

19. This Court has subject matter jurisdiction.

## FACTUAL ALLEGATIONS
### Application of Title IX in an Educational Setting

20. Title IX (20 U.S.C. §§1681-1688), enacted in 1972, provides in relevant part:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."
> 20 U.S.C. §1681(a)

21. In 1975, the Department of Health, Education and Welfare ("HEW"), the predecessor of the United States Department of Education ("DEd") adopted regulations interpreting Title IX. These regulations (the "Regulations") are codified at 34 C.F.R. Part 106. These regulations are enforced by the Office for Civil Rights ("OCR") within the DEd.

22. Bullying fosters a climate of fear and disrespect that can seriously impair the physical and psychological health of its victims and create conditions that negatively affect learning, thereby undermining the ability of students to achieve their full potential.

23. Civil rights statutes, such as Title IX and its implementing regulations, may be violated when peer sexual assault, bullying and/or harassment based on gender is sufficiently serious that it creates a hostile environment and such harassment is encouraged, tolerated, not adequately addressed or

4

ignored by school employees.

24. Harassing conduct may take many forms, including verbal acts, name-calling; graphic and written statements which may include use of cell phones or social media, non-verbal intimidation or other conduct that may be physically threatening, harmful, or humiliating.

25. Harassment does not have to include intent to harm, be directed at a specific target, or involve repeated incidents.

26. Harassment creates a hostile environment when the conduct is sufficiently severe, pervasive or persistent so as to interfere with, or limit, a student's ability to participate in or benefit from the services, activities or opportunities offered by a school.

27. A school is responsible for addressing harassment incidents about which it knows or reasonably should have known. When responding to allegations of harassment, a school must take immediate and appropriate action to investigate or otherwise determine what occurred. The inquiry should be prompt, thorough and impartial. Any steps taken to rectify the situation should not punish the victim of the harassment.

28. When the behavior implicates the civil rights laws, school administrators must look beyond simply disciplining the perpetrators; while that is likely a necessary step, it is often insufficient. A school's responsibility is to eliminate the hostile environment created by the harassment, address its effects and take steps to ensure that harassment does not recur. The unique effects of sexual harassment and discrimination may demand a different response than would other types of bullying.

29. Gordon endured post-assault harassment and bullying because of her sex that was so severe, pervasive and objectively offensive that it, in effect, deprived her of access to educational opportunities and associated benefits.

**Post-Assault Harassment**

30. During the spring semester of Gordon's junior year (2018), on May 28, 2018, she was

raped by a fellow student, Elias "Eli" Dowdy ("Dowdy"), at his home.

31. After the rape, on May 28, 2018, Dowdy began sending Gordon text messages saying:

- "I'm so sorry I swear"
- "If there is anything I can do to make it up to you lmk[1] cause I feel so bad"
- "I'm (sic) realize how bad it was and I'm sorry"
- "I did something you didn't want to"
- "sexual intercourse"

32. Despite her efforts to avoid him, Gordon continued to see Dowdy at Niagara Wheatfield High School through the end of that semester.

33. Beginning in June of 2018, both Gordon and Dowdy attended summer classes at the Tuscarora Indian School, also under the possession, control, and authority of NWCSD.

34. Gordon sank into a deep depression and had thoughts of suicide. In July of 2018, she was finally able to confide in a family member about the rape that had occurred on May 28, 2018. With that family member's encouragement, Gordon was subsequently able to tell her mother, Leslie Camp, about the rape.

35. Leslie Camp thereafter took Gordon to the Town of Niagara Police Department. The matter was referred to the Niagara County Sheriff's Office.

36. At the Niagara County Sheriff's Office, Gordon showed the deputies the series of text messages on her phone from Dowdy apologizing for what he did, saying how sorry he was and hoping that she was not going to turn him into the police.

37. The Niagara County Sheriffs conducted a controlled call with Dowdy. During that phone call Dowdy admitted that he had raped Gordon.

38. Dowdy was arrested at his house on July 31, 2018. Dowdy was arraigned in the Town of Niagara before Justice Anthony Restaino. The Court issued and served upon Dowdy an Order of Protection, signed by Judge Restaino, which required that he have no contact with Gordon.

---

[1] lmk – let me know

39. Even before Dowdy was arrested, Leslie Camp informed the principal at the Tuscarora Indian School of the situation. Rather than remove Dowdy from the school, Gordon was placed in another classroom so that she would not have to see Dowdy every day. After Dowdy was arrested on July 31, 2018, he did not return to the Tuscarora Indian School.

40. Gordon and Dowdy were both seniors at Niagara Wheatfield High School during the 2018-2019 school year. Before classes started, in August of 2018, Leslie Camp had a meeting with the principal, Michael Mann ("Principal Mann"). Ms. Camp told Principal Mann that Dowdy was charged with raping her daughter and provided him with a copy of the Order of Protection issued by Judge Restaino.

41. Despite being provided with a copy of the Order of Protection, Principal Mann told Leslie Camp that since criminal charges were only pending, and Dowdy had not been convicted, he would be allowed to attend school and the school could not take any measures against him that might be deemed punitive.

42. Nevertheless, Principal Mann assured Leslie Camp that Dowdy would have no contact with Taylor Gordon or with her two siblings, who also were attending Niagara Wheatfield High School. That promise was not kept.

43. Upon information and belief, after Principal Mann learned about the rape and pending criminal charges, he never told anyone at Niagara Wheatfield High School about the rape or criminal charges, including guidance counselors, teachers, or the school nurse; nor did he ever inform any officials at the district level about the criminal charges or Dowdy's alleged commission of sexual assault.

44. While Dowdy was allowed to fully participate in all school functions and compete as a member of the Niagara Wheatfield High School lacrosse team, Gordon was overcome with anxiety and continued to struggle with depression and feelings of worthlessness.

45. At school, Dowdy purposely went out of his way to encounter Gordon. Dowdy would,

7

for example, frequently stand outside her classroom. He would stare at her in a harassing and intimidating fashion as she walked past him.

46. Because Gordon continued to decompensate emotionally, Gordon went to speak with the guidance counselor, Mrs. Graber. Gordon told Mrs. Graber about the rape and criminal charges that were pending against Dowdy. She made a request to change her class schedule so she could avoid contact with Dowdy. Mrs. Graber ultimately did not do anything to address Gordon's concerns.

47. As a result of her frequent interactions with Dowdy, in September 2018, Gordon had a serious panic attack at school. It happened while she was in the school library. Gordon felt dizzy and her vision was blurred. A wheelchair was brought to the library to take her down to the nurse's office.

48. Later that day at Open House, Assistant Principal Jeff White ("Asst. Principal White") encountered Leslie Camp in the hallway and in front of other parents told her that Gordon "faked" a panic attack for attention.

49. Gordon continued to be harassed by Dowdy and, as the year progressed, she was also bullied by other students. She was called names; some of the female students would ask her things like "how was Eli" and "was it any good?". In December 2018, another student texted her a picture of Eli with the caption, "Here's your boyfriend". Gordon went to see Principal Mann and showed him the text messages. Mann took no action against the students, nor did he make any accommodations for Gordon.

50. Students, now more emboldened because they knew they could harass her with impunity, continued to bully and harass Gordon, telling her things like "watch your back". They sent her text messages insinuating that she enjoyed having sex with Dowdy. Gordon also showed these text messages to Asst. Principal White who, like Principal Mann, did not take any corrective action, hand out any disciplinary measures, take any steps to keep Gordon safe, or make any accommodations.

51. Throughout her high school years Gordon was on the Cheerleading Team. In

8

November 2018, Gordon had to miss one of the practices in order to meet with the Niagara County District Attorney's Office to discuss the criminal case against Dowdy. When she informed the coach, Jennifer Huchzermeier, why she had to miss practice, Coach Huchzermeier told her "it wasn't an excuse for her to miss cheer practice". As a result of the missed practice, Gordon was punished by Coach Huchzermeier and had to sit out a game.

52. Leslie Camp thereafter went to the Errick Road School and met with Coach Huchzermeier. Rather than taking Ms. Camp aside to discuss the matter privately, Coach Huchzermeier stood in a busy hallway and discussed the situation in a loud tone.

53. The next day, Leslie Camp had a meeting with Superintendent Daniel G. Ljiljanich and the Niagara Wheatfield Athletic Director. At that meeting Ms. Camp discussed, among other things, her concerns about Coach Huchzermeier.

54. The following day, Leslie Camp was asked to come back for another meeting with Superintendent Ljiljanich. This time Coach Huchzermeier was also present. Coach Huchzermeier denied Ms. Camp's version of their conversation.

55. Frustrated with the inaction of the school administrators, in December of 2018, Leslie Camp emailed NWCSD's superintendent, Daniel G. Ljiljanich. She left several messages for him to call her back to discuss the escalating situation. Superintendent Ljiljanich did not immediately return Ms. Camp's phone calls.

56. Gordon continued to be harassed and bullied by Dowdy and other students. In April 2019, Gordon confided the situation to her theater teacher, who immediately took Gordon to the guidance office to attempt to make sure that the situation was appropriately addressed. They met with Dr. Peters. Gordon told him that she had been raped by Dowdy. Dr. Peters, who seemed unaware of the situation, immediately changed Gordon's class schedule (rather than Dowdy's) so that hopefully Gordon would not have to see Dowdy as often as she had in the past. But the harassment continued.

57. On May 23, 2019, Dowdy pled guilty to third-degree rape before Niagara County Court

9

Case 1:22-cv-00172-JLS-MJR   Document 1   Filed 03/02/22   Page 10 of 14

Judge Sarah Sheldon pursuant to New York Penal Law §130.25.  That section states that a person is guilty of third degree rape if they "had sexual intercourse with a person who did not give consent to the act".  His sentencing was scheduled for some time after graduation.  In the meantime, he continued to attend school.

58.     After Dowdy pled guilty, Gordon met with Principal Mann and told him that she was still uncomfortable with being at the school with Dowdy; Principal Mann then placed Gordon (rather than Dowdy) in the "In School Suspension" room; her phone was taken away from her and she did not attend classes that day.

59.     After Dowdy pled guilty, Leslie Camp also called Principal Mann and asked him "What are you going to do now that he has pled guilty to the rape? What happens from here?" and he told her, "We'll have to look into it".  Subsequently, Principal Mann called Leslie Camp and told her, based on advice from the district's legal counsel, Dowdy would be able to attend all school functions including prom and graduation despite being a convicted rapist.  Again, no attempt was made to protect Gordon from Dowdy.

60.     Dowdy's court case and conviction were publicized in the local media.

61.     On or about May 31, 2019, students at the Niagara Wheatfield High School who had previously been unaware of Dowdy's court case, organized a walkout to protest the school's decision to allow a rapist to attend school with them all year long and was continuing to do so.

62.     Principal Mann discouraged students from participating in the walkout and, upon information and belief, several students were suspended as a result.

63.     The walkout brought nationwide attention to the school's misconduct.  Only then did NWCSD remove Dowdy from school.

64.     On June 6, 2019, NWCSD placed Principal Mann on administrative leave pending an independent investigation after the district was confronted by a crowd of parents at a school board meeting demanding his resignation.

10

## FIRST CAUSE OF ACTION UNDER TITLE IX

### NWCSD's Deliberate Indifference to Gordon's Post-Assault Claims

65. Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 69 inclusive of this Complaint.

66. GORDON alleges she (1) was a student who was (2) sexually assaulted and subjected to post-assault bullying and harassment (3) based upon her gender; (4) that the bullying and harassment was sufficiently severe and pervasive to create an abusive educational environment, and (5) that a cognizable basis for institutional liability exists.

67. To prove a post-assault claim, a plaintiff must show:

   a. Defendant had actual knowledge;
   b. the harasser was under the defendant's control;
   c. the harassment was gender-based;
   d. the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victims' access to an educational opportunity or benefit; and
   e. the Defendant was deliberately indifferent.

68. NWCSD had actual knowledge of Gordon being raped by Dowdy prior to the beginning of the 2018/2019 school year. In August 2018, Leslie Camp personally met with Principal Mann and told him Dowdy raped her daughter and that he had been arrested.

69. Despite knowing that Dowdy had been arrested and criminal charges for rape were pending against him, Dowdy was allowed to continue as a student at Niagara Wheatfield High School.

70. Throughout the school year both Gordon and her mother Leslie Camp repeatedly reported incidents of harassment and bullying by Dowdy and other students to the NWCSD's superintendent, principal, vice principal, guidance counselors, cheer coach and teachers. None of the students involved in the bullying and harassing conduct complained of by Gordon were ever disciplined. Nor did the school consider the effect on Gordon of having to face her rapist on a daily basis. The school allowed Dowdy to attend classes and play sports, and it remained deliberately indifferent, if not outright hostile, to Gordon's rights as a sexual assault victim.

71. Principal Mann failed to take appropriate steps to mitigate the situation; he never removed Dowdy from school, changed his schedule, or put a plan in place to deal with the situation.

72. Throughout this timeframe, Gordon continued to experience various incidents of gender-based harassment. She was called various names and threatened by students telling her to "watch your back".

73. As a result, Gordon felt isolated, alienated, and shunned. She became increasingly depressed and suicidal. She continues to have issues with self-image, fearfulness in public, and episodes of PTSD.

74. NWCSD's deliberate indifference to bullying and sexual harassment suffered by Dowdy created a heightened risk that made her continuing and future harassment more likely, and she was actually subjected to such bullying and harassment. As a result of the deliberate indifference of NWCSD to post-assault bullying and sexual harassment, Gordon has been diagnosed with severe depression and other mental health symptomology.

## RELIEF SOUGHT

**WHEREFORE,** plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

(1) Judgment in an amount not currently ascertainable but which exceeds the jurisdictional threshold of this Court for gender-based harassment under Title IX, compensatory damages and other monetary relief as permitted by law; and an award of attorneys' fees and expenses.

PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES HEREIN TRIABLE.

Dated: March 2, 2022
Buffalo, New York

/s/ Barry N. Covert
Barry N. Covert, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue – Suite 120
Buffalo, New York 14202
Phone: (716) 849-1333
Email: bcovert@lglaw.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of New York

TAYLOR GORDON

*Plaintiff(s)*

v.                                  Civil Action No.

NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT

*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT
5700 WEST STREET
SANBORN, NY 14132

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                                 _____
                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: