UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TAYLOR GORDON,                                    1:22-CV-00172 JLS (MJR)

                                                  REPORT AND
                                                  RECOMMENDATION

                            Plaintiff,

        v.

NIAGARA WHEATFIELD CENTRAL
SCHOOL DISTRICT,

                            Defendant.

_____

        This case has been referred to the undersigned pursuant to Section 636(b)(1) of

Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 5)

Before the Court is plaintiff's motion to amend the complaint. (Dkt. No. 20) For the

following reasons, it is recommended that plaintiff's motion to amend the complaint be

granted in part and denied in part.[1]

_____

[1] The proper classification of a motion to amend the complaint as either dispositive or non-
dispositive is not settled within the Second Circuit. *See Louis v. Metro. Transit Auth.*, 12-CV-
6333, 2014 U.S. Dist. LEXIS 147417, at *2 (E.D.N.Y. Oct. 16, 2014) (noting that the Second
Circuit has referred to a motion to amend as a non-dispositive matter, but has not explicitly
decided the issue, and that district courts in this Circuit have suggested that a magistrate
judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant
of the same motion should be treated as non-dispositive); *Allen v. United Parcel Serv., Inc.*, 988
F. Supp. 2d 293, 297 (E.D.N.Y. 2013) (noting that authority is divided about whether a motion to
amend a complaint is a dispositive or non-dispositive matter and declining to take a position
where court would adopt the R & R under either standard); *Dollar Phone Corp. v. St. Paul Fire*,
09-CV-1640, 2011 WL 837793, at *1 (E.D.N.Y. Mar. 4, 2011) ("The proper standard of review to
apply to objections to a magistrate's order denying leave to amend is not clearly settled in this
Circuit."); *Zink v. First Niagara Bank, N.A.*, 13-CV-1076-A, 2015 WL 423221, *1 n.2 (W.D.N.Y.
2015) ("[d]istrict courts in this circuit have suggested that a magistrate judge's denial of a motion
to amend . . . should be treated as dispositive, while a grant of the same motion should be
treated as non-dispositive.") (internal quotations and citation omitted). Accordingly, in an
abundance of caution, and because the Court is denying in part the plaintiff's motion to amend,
the Court has treated the motion as dispositive.

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint only by leave of the Court after a responsive pleading has been served, and that such leave shall be freely given when justice so requires. *See* Fed. R. Civ. P. 15(a). The Second Circuit has held that it is the "rare" case that leave should be denied "especially when there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Denial of a motion to amend is appropriate in circumstances of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment[.]" *Forman v. Davis*, 371 U.S. 178, 81-82 (1962). Denial of a motion to amend is also permitted when the requested amendment is futile. *Borski v. Staten Island Rapid Transit*, 413 Fed. Appx. 409, 411 (2d Cir. 2011) ("One good reason to deny leave to amend is when such leave would be futile.") (internal citations omitted).

Leave to amend may be denied as futile when any newly asserted claims would not withstand a motion to dismiss. *See Berlin v. Jetblue Airways Corp.*, 18-CV-1545, 2020 WL 502629, at *4-5 (E.D.N.Y. Jan. 30, 2020). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *Id.*; *quoting IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Group, PLC*, 783 F.3d 383, 386 (2d Cir. 2015).

In this case, plaintiff Taylor Gordon filed her initial complaint in this lawsuit on March 2, 2022. (Dkt. No. 1) Gordon alleged that on May 28, 2018, during the spring semester of her junior year as a student attending Niagara Wheatfield High School ("Wheatfield High School"), she was raped by Elias Dowdy, a fellow student at the school. (*Id.*) The matter was reported to the police and Dowdy was ultimately convicted of third-degree rape. (*Id.*) Plaintiff alleged that, after the rape, she suffered gender-based harassment and post-assault bullying from Dowdy and other students at Wheatfield High School. (*Id.*) She alleged that despite reporting the conduct to defendant Niagara Wheatfield Central School District (the "District"), and requesting that she have no interaction with Dowdy, the District took no steps to protect her from the bullying and harassment or to prevent her from having to see and interact with Dowdy on a regular basis while attending school. (*Id.*) Plaintiff alleged that the District's failure to protect her from the hostile environment created by Dowdy and others deprived her of educational opportunities, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). (*Id.*) Defendant filed an answer to the complaint on May 2, 2022. (Dkt. No. 4)

On June 9, 2022, this Court issued a Case Management Order which required, *inter alia*, that any motions to amend the pleadings be filed by July 16, 2022. (Dkt. No. 7) Following a number of extensions of this deadline requested by plaintiff with the consent of defendant, plaintiff filed the instant motion to amend the complaint on October 14, 2022. (Dkt. No. 20) Plaintiff now seeks to add various constitutional claims pursuant to 28 U.S.C. § 1983, including alleged violations of her rights under the First Amendment, the Equal Protection Clause, and the Due Process Clause. (*Id.*) Plaintiff also seeks to add the

3

Niagara Wheatfield Central School District Board of Directors (the "School Board") as a defendant, and seeks to add individual defendants Michael Mann, Mary Graber, Jeffrey White, Jennifer Huchzermeier, Daniel Ljiljanich, and Mark Peters, all current or former employees of the District and all named by plaintiff in both their official and personal capacities. (*Id.*)

Defendant opposes the motion to amend on the basis that plaintiff's proposed amendments are futile. (Dkt. No. 27) Defendant contends that, as a matter of law, the new causes of action and additional defendants set forth by plaintiff fail to state any viable claims for relief. (*Id.*) Defendant further argues that, in light of the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), plaintiff's Title IX claims are now futile and therefore also fail to state a viable claim for relief. (*Id.*)

Because defendant essentially argues that plaintiff's proposed new claims, as well as her original claim for relief under Title IX, all fail as a matter of law, the Court will analyze the entire amended complaint pursuant to the motion to dismiss standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Themis Capital, LLC v. Democratic Congo,* 08 Civ. 1652, 2013 U.S. Dist. LEXIS 56645 (S.D.N.Y. April 18, 2013) ("[F]utility under Rule 15 turns on whether a proposed pleading would be able to withstand a dispositive pretrial motion."). To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept as true the factual allegations contained in a

complaint and draw all inferences in favor of the plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Notably, a party opposing a motion to amend bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-8 (E.D.N.Y. 1998). Furthermore, the court should not consider the merits of a claim or defense on a motion to amend unless the amendment is "clearly frivolous or legally insufficient on its face." *Northbrook Nat'l Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996). "If the [movant] has at least colorable grounds for relief, justice . . . require[s]" that the court grant leave to amend a complaint. *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992).

## PROPOSED AMENDED COMPLAINT

The following is a summary of the allegations in plaintiff's proposed amended complaint, which the court must accept as true for purposes of deciding the instant motion. On May 28, 2018, at the end of her junior year at Wheatfield High School, Taylor Gordon was raped by Elias Dowdy, another student at Wheatfield High School. (Dkt. No. 20-2, ¶¶ 2, 30) The rape occurred off-campus, at Dowdy's home. (*Id.* at ¶ 31) Gordon and her mother, Leslie Camp, reported the crime to the Town of Niagara Police Department, and the matter was referred to the Niagara County Sheriff's Office. (*Id.* at ¶ 36) Gordon produced text messages to officers wherein Dowdy admitted to the rape. (*Id.* at ¶¶ 37-38) Officers then conducted a controlled call between Gordon and Dowdy, during which time Dowdy further admitted to the crime. (*Id.*) Dowdy was arrested on July 31, 2018, and was

later arraigned by Town of Niagara Justice Anthony Restaino. (*Id.* at ¶39) Judge Restaino also issued an order of protection, which prohibited Dowdy from having any contact with Gordon. (*Id.*)

Gordon and Dowdy were both members of the senior class at Wheatfield High School for the 2018-2019 school year. (*Id.* at ¶ 41) In August of 2018, before the school year began, Camp met with defendant Michael Mann, principal of Wheatfield High School. (*Id.* at ¶ 42) Camp informed Principal Mann that Dowdy was criminally charged with the rape of her daughter and provided Mann with a copy of the order of protection signed by Judge Restaino. (*Id.*) Despite being informed of the pending criminal charges and the order of protection, Mann informed Camp that Dowdy could not be prevented from attending school and that the District could not take any action against Dowdy which could be deemed punitive. (*Id.* at ¶ 43) As a result, Dowdy was permitted to fully participate in all school functions and activities, and was permitted to compete as a member of the school's lacrosse team. (*Id.* at ¶ 46) Principal Mann still assured Camp that Dowdy would not have any contact with Gordon. (*Id.* at ¶ 44) However, upon Gordon's information and belief, Mann did not inform any teachers, counselors, or other staff members at Wheatfield High School about the rape and criminal charges against Dowdy. (*Id.*) Likewise, Mann undertook no measures to enforce the order of protection or otherwise ensure that Gordon would not encounter Dowdy during the school year. (*Id.* at ¶¶ 44-45)

After the school year began, Dowdy purposefully went out of his way to encounter Gordon at school. (*Id.* at ¶ 47) Dowdy would frequently stand outside of Gordon's classroom and would stare at her in an intimidating and harassing manner when she walked past him. (*Id.*) Gordon went to speak with defendant Mary Graber, a guidance

6

counselor at Wheatfield High School. (*Id.* at ¶ 48) She informed Graber about the rape and pending criminal charges against Dowdy. (*Id.*) Gordon requested to change her class schedule to avoid encountering Dowdy. (*Id.*) However, Graber took no action to address Gordon's concerns. (*Id.*) As a result of her frequent encounters with Dowdy, Gordon suffered a panic attack at Wheatfield High School in September 2018. (*Id.* at ¶ 49) She became dizzy and her vision blurred, and a wheelchair was brought to the library to take Gordon to the nurse's office. (*Id.*) Later that day, during the school's Open House event, defendant Jeffery White, assistant principal of Wheatfield High School, told Camp, in the hallway and in front of other parents, that her daughter had faked a panic attack for attention. (*Id.* at ¶ 50)

As the school year continued, Gordon continued to be harassed by Dowdy as well as by other students. (*Id.* at ¶ 51) She was called names and some of the female students sent her text messages to the effect of "how was Eli" and "was it any good?" (*Id.*) In December 2018, a student texted Gordon a picture of Dowdy with the caption, "Here's your boyfriend." (*Id.*) Gordan showed these messages to Principal Mann. (*Id.*) However, Mann took no action against the students involved. (*Id.*) He did not attempt to make any accommodations for Gordon to address the harassment. (*Id.*) Students at Wheatfield High School continued to send bullying and harassing messages to Gordon. (*Id.* at ¶ 52) For example, they sent messages to Gordon insinuating that she enjoyed having sex with Dowdy and also made statements such as "watch your back." (*Id.*) Gordon showed these messages to Assistant Principal White. (*Id.*) Like Mann, White undertook no disciplinary action or corrective measures with regard to the messages, and took no steps to accommodate Dowdy with respect to her complaints of harassment. (*Id.*)

Gordon was a member of the Wheatfield High School Cheerleading Team. (*Id.* at ¶ 53) In November 2018, Gordon missed a cheerleading team practice in order to meet with the Niagara County District Attorney's Office to discuss the case against Dowdy. (*Id.*) Defendant Jennifer Huchzermeier, coach of the cheerleading team, told Gordon that this was not an acceptable reason to miss practice. (*Id.*) As a result, Gordon was made to sit out from cheerleading during a school sporting event because she missed practice. (*Id.*) Camp contacted defendant Daniel Ljiljanich, Superintendent of the District, as well as the District's Athletic Director, to discuss Huchzermeier's treatment of Gordon. (*Id.* at ¶¶ 54-56) However, neither Ljiljanich nor the Athletic Director took any action to address Camp's complaints. (*Id.*) Frustrated with the repeated inaction of administrators at Wheatfield High School, Camp emailed Superintendent Ljiljanich to discuss the situation with her daughter and Dowdy. (*Id.* at ¶ 57) Despite leaving several messages, Ljiljanich did not immediately return Camp's calls. (*Id.*) Also during this time, Gordon continued to be harassed and bullied by Dowdy and other students at Wheatfield High School. (*Id.* at ¶ 58)

In April of 2019, Gordon told her theater teacher about the situation with Dowdy. (*Id.*) The theater teacher took Gordon to meet with defendant Mark Peters, a counselor at Wheatfield High School, to address the issue. (*Id.*) Gordon told Peters that she had been raped by Dowdy, and Peters appeared to be previously unaware of the situation. (*Id.*) Peters immediately changed Gordon's class schedule to try and prevent her from seeing Dowdy. (*Id.*) Dowdy's schedule was not changed. (*Id.*) Despite the change to Gordon's schedule, the harassment continued. (*Id.* at ¶ 59)

On May 23, 2019, Dowdy pled guilty, before Niagara County Court Judge Sarah Sheldon, to third degree rape in violation of New York Penal Law § 130.25. (*Id.* ¶ 60) His

sentencing was scheduled for some time after graduation and, in the meantime, he continued to attend Wheatfield High School. (*Id.*) Gordon met with Principal Mann and informed him that she was uncomfortable being around Dowdy after he pled guilty to raping her. (*Id.* at ¶ 61) Mann then placed Gordon in the "In School Suspension" room for the day. (*Id.*) He took her cell phone away from her and she attended no classes that day. (*Id.*) Gordon was given no opportunity to challenge or object to Mann's decision to place her in the in-school suspension room. (*Id.*)

Also following Dowdy's guilty plea, Camp telephoned Principal Mann to ask how the school would handle the situation in light of the fact that Dowdy had now been convicted of raping Gordon. (*Id.* at ¶ 62) Mann responded that the District would "have to look into it." (*Id.*) Subsequently, Mann informed Camp that, after speaking with legal counsel, the school had decided that Dowdy would still be permitted to attend all school functions, including prom and graduation. (*Id.* at ¶ 63) No attempts were made to protect Gordon from contact with Dowdy. (*Id.*)

Around this same time, Dowdy's conviction was reported in a local paper. (*Id.* at ¶ 64) On or about May 31, 2019, some students at Wheatfield High School, who were previously unaware of the charges against Dowdy, organized a walk-out to protest the school's decision to allow Dowdy to continue to attend school. (*Id.* at ¶ 65) Principal Mann discouraged students from participating and, upon Gordon's information and belief, several students were suspended as a result of the walk-out. (*Id.* at ¶ 66) The walk-out garnered national attention. (*Id.* at ¶¶ 67-68) Shortly thereafter, the District removed Dowdy from school. (*Id.*) On June 6, 2019, the District and the School Board placed

9

Principal Mann on administrative leave pending an independent investigation. (*Id.* at ¶ 69)

Gordon alleges that the post-assault harassment, bullying, and ridicule she suffered, on account of her sex, was so severe, pervasive, and objectively offensive that it effectively deprived her of the right to educational opportunities as well as the right to a harassment-free educational environment. (*Id.* at ¶ 70) Gordon submits that she faced the offensive conduct, bullying, and harassment every day that she attended school during the relevant period and that she was punished for speaking out about the assault and ongoing sexual harassment. (*Id.* at ¶¶ 80, 86) As a result of the bullying and harassment that defendants failed to remedy, Gordon felt isolated, alienated, and shunned as well as depressed and suicidal. (*Id.* at ¶ 99) Gordon continues to experience issues with self-image, fearfulness in public, and symptoms of post-traumatic stress disorder. (*Id.*) She was diagnosed with severe depression and other mental health symptomology. (*Id.* at ¶¶ 99-100) Gordon previously sought and continues to seek counseling services for her mental health issues. (*Id.*)

Gordon alleges that peer-on-peer sexual assault, bullying and harassment is not rare, but is instead a serious problem often encountered by many school districts. (*Id.* at ¶ 71) Thus, schools can, and often do, avoid situations where students are deprived of their constitutional right to a harassment-free educational environment by codifying clear policies for administrators, teachers, and staff concerning how to handle allegations of sexual assault, harassment, and bullying as well as by properly training and supervising employees in how to implement these policies. (*Id.* at ¶ 72) Gordon further alleges that clear guidance and training as to how to handle complaints of assault, harassment, and

bullying results in less mishandling of complaints and less instances of students being denied their constitutional right to educational opportunities and harassment-free school environments. (*Id.*)

The District operated, oversaw and was responsible for Wheatfield High School. (*Id.* at ¶ 8) The School Board has the responsibility and authority to set district-wide policies and procedures. (*Id.* at ¶ 10) At all times relevant to the lawsuit, neither the District nor the School Board had any policies or procedures in place to address allegations of peer-on-peer sexual assault, harassment, and ridicule on the basis of sex. (*Id.* at ¶¶ 71-73) Likewise, the District and the School Board did not train their staff to prevent, mitigate, or appropriately handle reports of peer-on-peer sexual assault, bullying, or harassment on the basis of sex, nor did they have any supervision of staff in place to monitor how complaints of peer-on-peer sexual assault, bullying, or harassment on the basis of sex were addressed. (*Id.* at ¶¶ 74-77) Moreover, defendants' mishandling of Gordon's reports of assault, harassment and bullying was not the only time that defendants mishandled similar allegations and complaints. (*Id.* at ¶ 79) At least three other students of the District suffered repeated, persistent, and severe sexual assault, bullying, and harassment while defendants failed to respond. (*Id.*)

Gordon asserts the following causes of action based upon the conduct described above: (1) harassment and retaliation by the District and the School Board, in violation of Title IX; (2) denial of Equal Protection under the Fourteenth Amendment of the Constitution, on the basis of sex, in the form of harassment and disparate treatment by all defendants, in violation 42 U.S.C. § 1983 ("Section 1983"); (3) First Amendment retaliation, by all defendants, in violation of Section 1983; (4) denial of substantive Due

Process under the Fourteenth Amendment, against all defendants, in violation of Section 1983; and (5) denial of procedural Due Process under the Fourteenth Amendment, against all defendants, in violation of Section 1983. (*Id.* at ¶¶ 82-163) Gordon seeks the following relief: (1) nominal and compensatory damages in an amount to be determined at trial; (2) punitive damages; (3) pre- and post-judgment interest; (4) costs and expenses, including attorneys' fees; (5) an order declaring that defendants' violated Title IX and violated Gordon's constitutional rights; (6) an order requiring the District and the School Board to implement policies and procedures to prohibit retaliation against the targets of harassment, bullying, or discrimination; and/or prohibiting biased discipline in response to reports of sexual assault, sexual harassment, discrimination, bullying, cyberbullying, and ridicule on the basis of sex; and (7) an order compelling defendants to cease and desist from discrimination against female students. (*Id.* at pgs. 32-33)

## DISCUSSION

### *Title IX: Mootness*

Defendant contends that, in light of the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller*, P.L.L.C., 142 S. Ct. 1562 (2022), plaintiff has no cognizable damages pursuant to her Title IX claims. Defendant argues, therefore, that the Title IX claims against the District and the School Board must be dismissed as futile, since, absent the potential to recover damages, plaintiff has no standing to pursue this cause of action in federal court. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.").

In *Cummings*, the Supreme Court held that a plaintiff suing under the Affordable Care Act and the Rehabilitation Act could not recover damages for emotional distress. 142 S. Ct. at 1576. The Supreme Court based its decision on the fact that these statutes were passed pursuant to Congress' powers under the Spending Clause of the Constitution and a Spending Clause funding recipient is only subject to remedies traditionally available for breach of contract suits, which do not include emotional distress damages. *Id.* at 1571. In addition, the *Cummings* Court confirmed its prior determination that punitive damages are also not available for violations of Spending Clause legislation. *Id.*; *accord Barnes v. Gorman*, 536 U.S. 181, 185 (2002). The *Cummings* Court did not specifically address claims, like the one at issue here, brought pursuant to Title IX. Nonetheless, defendant contends that *Cummings'* prohibition on emotional distress and punitive damages applies equally to Title IX claims since Title IX, like the Rehabilitation Act and the Affordable Care Act, is a Spending Clause antidiscrimination statue. *See Cummings*, 142 S. Ct. at 1568 (explaining that Congress has enacted four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds, and these statutes include Title VI, Title IX, the Rehabilitation Act, and the Affordable Care Act).

While the Second Circuit Court of Appeals has not yet considered this issue, most courts interpreting the issue post-*Cummings* have found that plaintiffs are precluded from recovering emotional distress and punitive damages under Title IX. *See e.g., Doe 1 v. Curators of Univ. of Missouri*, 19-CV-04229, 2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022) (holding that *Cummings* applies to Title IX claims and therefore plaintiff could not recover emotional distress damages for claims based on Title IX); *Bonnewitz v. Baylor*

13

*Univ.*, 6:21-CV-00491, 2022 U.S. Dist. LEXIS 122572 (W.D. Tex. 2022) ("Damages for emotional distress are not recoverable for violations of anti-discrimination statutes, including Title IX."); *Doe v. Bd. of Regents of the Univ. of Neb.*, 4:20-CV-3036, 2022 U.S. Dist. LEXIS 148284 (D. Neb. 2022) ("Doe concedes that the holding in *Cummings* generally precludes emotional-distress damages in Title IX cases like hers."); *Doe v. City of Pawtucket*, 17-365, 2022 U.S. Dist. LEXIS 179574 (D.R.I. 2022) ("While the Supreme Court's holding in *Cummings* was limited to the ACA and RA, the opinion's underlying reasoning forces the same conclusion for Title IX."); *A.T. v. Oley Valley Sch. Dist.*, 17-4983, 2023 U.S. Dist. LEXIS 16619 (E.D. Pa. Feb. 1, 2023) ("It follows that although the *Cummings* decision involved only claims brought pursuant to the RA and the ACA, it would also extend to an implied right of action brought under another Spending Clause statute, Title IX."); *Fisk v. Bd. of Trustees of California State Univ.*, 22-CV-173, 2023 U.S. Dist. LEXIS 64620 (S.D. Cal. Apr. 12, 2023) ("Emotional distress damages and punitive damages…are not available when a recipient of federal financial assistance discriminates under Title IX because these are not traditional forms of relief for breach contract[.]").[2]

While the holding in *Cummings* may preclude a plaintiff, like Gordon, from recovering emotional distress and punitive damages, it does not serve as a complete bar to Title IX claims where that plaintiff seeks other remedies. Defendant correctly notes that

---

[2] Some courts have concluded, post-*Cummings*, that the Supreme Court's determination did not necessarily extend to all antidiscrimination Spending Clause statutes. *See Doe v. Purdue Univ.*, 4-18-CV-89, 2022 WL 2828238 (N.D. Ind. Jul. 20, 2022) ("Because *Cummings* was not a Title IX action, it does not make evidence of emotional distress or harm inadmissible in this [Title IX] case."); *Coleman v. Cedar Hill Indep. Sch. Dist.*, 3:21-CV-2080, 2022 U.S. Dist. LEXIS 84015, n. 2 (N.D. Tex. May 10, 2022) ("Because [plaintiff's] claims are not limited to the Rehabilitation Act, *Cummings* does not alter the court's analysis as it relates to her other claims.") However, these cases do not represent the majority view on the issue. Moreover, these cases did not fully analyze the issue of *Cummings*' implication for all Spending Clause legislation as did the cases cited above.

Gordon's request for injunctive relief requiring policy and procedure changes as well as a cease and desist order are moot, since Gordon no longer attends Wheatfield High School. However, Gordon also seeks other forms of relief which are not moot. Indeed, Gordon's amended complaint includes a general request for compensatory damages; a request for declaratory relief in the form of a statement acknowledging that defendant violated Title IX; attorneys' fees and costs; and nominal damages.

Notably, in *Fantasia v. Montefiore New Rochelle*, 19-CV-11054, 2022 U.S. Dist. LEXIS 107935 (S.D.N.Y. July 16, 2022), a Southern District of New York court held that while a plaintiff asserting violations of the Rehabilitation Act and the Affordable Care Act could not recover emotional distress damages in light of *Cummings*, the claims were not moot since plaintiff may still be entitled to nominal damages. *Id.* The *Fantasia* Court logically reasoned that nominal damages are a generally accepted remedy in contract actions, and in *Cummings* the Supreme Court held that generally accepted contractual remedies were appropriate to address violations of the Spending Clause antidiscrimination statutes. *Id.* The *Fantasia* Court also recognized that a plaintiff who seeks nominal damages to redress an injury, like Gordon has done here, "has standing to pursue her claim in federal court; that is, her claim is not moot." *Id.*; *accord Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801-02 (2021). *See also Klaneski v. Bristol Hosp.*, Inc., 3:22-CV-1158, 2023 U.S. Dist. LEXIS 113107 (Dist. Conn. June 30, 2023) (holding that while plaintiff's claim for punitive and emotional distress damages under the Affordable Care Act was prohibited, plaintiff was permitted to amend her complaint to add

claims for, *inter alia*, nominal damages, since "these types of remedies are not subject to the restrictions set forth in *Cummings* and *Barnes*.").[3]

Other courts have similarly held that a plaintiff like Gordon, who seeks relief other than punitive and emotional distress damages, may pursue a Title IX claim in federal court. *See e.g., Doe v. Town of Andover*, 1:20-CV-10310, 2023 U.S. Dist. LEXIS 85243 (Dist. Mass. May 16, 2023) (rejecting defendant's argument that plaintiff's Title IX claim should be dismissed for lack of cognizable damages, since plaintiff sought other relief, including expenses incurred for tuition, school, and other consequences of the assault); *A.S. v. City School Dist. of Albany*, 585 F. Supp. 3d 246, 283 n. 21 (N.D.N.Y. 2022) (refusing to dismiss Title IX claim in the context of a school's alleged failure to protect students from sexual harassment, at the pleadings stage, where plaintiff sought declaratory relief such as a request for a public apology and a retraction of statements); *Doe v. Fairfax Cnty. Sch. Bd.*, 1:18-CV-00614, 2023 U.S. Dist. LEXIS 13886 (E.D. Va. June 28, 2019) (recognizing that losses of educational opportunities remain recoverable

---

[3] Defendant points to *Hejmej v. Peconic Bay Med. Ctr.*, 17-CV-782, 2022 WL 5429675, at *8 (E.D.N.Y. July 5, 2022), where a Magistrate Judge in the Eastern District of New York recommended dismissal of plaintiffs' Rehabilitation Act and Affordable Care Act claims based on *Cummings*, and further held that plaintiffs could not salvage the claims merely by "recasting [them] as a request for nominal damages." However, the District Judge later declined to adopt this recommendation, instead adopting the reasoning set forth in *Fantasia* and concluding that plaintiffs *could* seek nominal damages for defendants' alleged violations of the Rehabilitation Act and Affordable Care Act. 2022 U.S. Dist. LEXIS 177652, *2-5. Thus, the District Court in *Hejmej* did not ultimately dismiss plaintiffs' claims under the antidiscrimination Spending Clause statutes as moot. *Id.* Defendant also argues that both Supreme Court and Second Circuit precedent establish that attorneys' fees and costs are generally not appropriate when a plaintiff receives only nominal damages. Gordon has alleged remedies other than emotional distress or punitive damages which are sufficient to grant standing in a Title IX claim. Thus, plaintiff's ability to also recover attorneys' fees under those other forms of relief is irrelevant to the issue presently before this Court.

post-*Cummings* and plaintiff was permitted to present evidence related to compensatory damages for lost educational opportunities and benefits in support of her Title IX claim).[4]

In sum, the Court acknowledges that the holding in *Cummings* may seriously circumscribe the amount of damages Gordon is able to recover based on her Title IX claims. However, *Cummings* does not require a finding, as a matter of law and at this early stage of the proceeding, that plaintiff lacks standing to pursue a Title IX claim.

*Title IX: Sufficiency of the Allegations*

Defendant next argues, notwithstanding *Cummings*, that plaintiff's Title IX claims are futile because the allegations in the amended complaint are insufficient as a matter of law. To establish a Title IX claim based on student-on-student harassment, a plaintiff must demonstrate that: (1) the school authorities had actual knowledge of the harassment; (2) they were deliberately indifferent to the harassment; and (3) the harassment was "so severe, pervasive, and objectively offensive" that it deprived the plaintiff of "access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).

Gordon alleges that, before the school year began, she and her mother informed Principal Mann about the sexual assault committed by Dowdy and the pending criminal

---

[4] Defendant argues that the complaint does not allege that plaintiff suffered any economic or compensatory damages other than those related to emotional distress. The Court disagrees. Plaintiff's complaint generally seeks relief in the form of "compensatory damages in an amount to be determined at trial", without qualification that those damages are related to emotional distress. Plaintiff is not required to itemize damages at this stage of the proceeding. *See Kim v. Lee*, 576 F. Supp. 3d, 14, 35 (S.D.N.Y. 2021). It may be the case that plaintiff is ultimately unable to substantiate any actual compensatory damages unrelated to emotional distress. However, it would be premature, at this stage of the litigation, to dismiss plaintiff's Title IX claim before the record is more fully developed and discovery into the scope of plaintiff's damages is complete. *See Fisk*, 2023 U.S. Dist. LEXIS 64620 ("Whether or not Plaintiffs will be able to show entitlement to compensatory damages after discovery is a different question than whether their injury is redressable.")

charges against him. They also provided Mann with the order of protection signed by Judge Restaino which prohibited Dowdy from having any contact with Gordon. However, Mann took no action to prevent Gordon from having to regularly encounter Dowdy during the school year. Mann did not inform any other administrators, teachers, or staff members at the school about either the sexual assault or Gordon's concerns about encountering Dowdy, nor did he take any action to ensure that Judge Restaino's protective order was being upheld. Gordon further alleges that she informed both Principal Mann and Assistant Principal White, as well as counselors or other staff members at Wheatfield High School, that she was being continuously harassed and bullied by Dowdy and other students. Gordon alleges that despite asking defendants for their help, they did nothing to either discipline the harassers or to protect her from the offensive conduct. She alleges that defendants' inaction continued throughout the entire 2018-2019 school year. In fact, Gordon alleges that Dowdy was not removed from Wheatfield High School until students organized a nationally recognized walk-out, on May 31, 2019, to object to the District's decision to allow Dowdy to continue to attend school after he was convicted of raping Gordon. Thus, plaintiff has sufficiently alleged that school authorities had knowledge of, and were deliberately indifferent to, the harassment. *See McGrath v. Dominican Coll. Of Blauvelt, New York*, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009) ("The standard for deliberate indifference is whether the school failed to act reasonably under the circumstances."); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003) ("Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when

remedial action only follows after a lengthy and unjustified delay.") (internal citations and quotations omitted).

As to the nature and severity of the harassment, Gordon alleges that Dowdy purposefully went out of his way to encounter her at school. She alleges that despite the order of protection, Dowdy frequently stood outside of her classroom in an attempt to threaten and intimidate her. Gordon further alleges that she regularly received vulgar, offensive, and threatening text messages from other students regarding her non-consensual sexual encounter with Dowdy. In fact, Gordon specifically alleges that she was subjected to "violent, threatening text messages, direct offensive sexual comments to and about [her], retaliatory comments and actions, and violations of a restraining order." (Dkt. No. 20-2, ¶ 91) Gordon also alleges that the conduct was continuous, in that it began the summer before her senior year and continued through May, and that she faced the offensive conduct every school day throughout the year. Based upon these allegations, the Court concludes that Gordon sufficiently alleges that she was made to suffer severe, pervasive, and objectively offensive harassment. *See e.g., A.A. v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 511-13 (W.D.N.Y. 2021) (concluding that plaintiff sufficiently alleged severe and pervasive post-assault harassment based on her allegations that the school did nothing to prevent her attacker, against whom an order of protection had been issued, from encountering her on a regular basis, ridiculing her, and recruiting others to do the same); *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 227 (D. Conn. 2006) (denying summary judgment on issue of severity and pervasiveness where student was subjected to daily harassment, throughout the entire school year, in public settings such as classrooms and hallways by multiple students);

*Kelly v. Yale Univ.*, 3:01-CV-1591, 2003 U.S. Dist. LEXIS 4543 (Dist. Conn. Mar. 26, 2003) ("[A] reasonable jury could conclude that further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities[.]"); *Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438 (Dist. Conn. Sept. 18, 2006) (allegations that attacker was permitted to continue attending school in the same building as the victim after a sexual assault, "leaving open the constant potential for interactions between them," as well as allegations that the attacker's friends harassed the victim on several occasions, could support a reasonable jury conclusion of severe, pervasive, and objectively offensive conduct under *Davis*).[5]

Finally, plaintiff has sufficiently alleged that she was deprived of educational benefits or opportunities as a result of the harassment. Indeed, the Second Circuit has explained that "even where a Title IX plaintiff's academic performance does not appear to have suffered during the alleged sexual harassment but the harassment simply created a disparately hostile educational environment relative to her peers, the issue of whether the harassment deprived the plaintiff of educational opportunities and benefits is one for the trier of fact." *Doe v. East Haven Bd. of Educ.*, 200 F. App'x 46, 47 (2d Cir. 2006); *accord Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 748-50 (2d Cir. 2003)). Moreover, a

---

[5] Defendant maintains that plaintiff's allegations do not rise to the level of severe and pervasive harassment. In reaching the opposite conclusion here, the Court is mindful of the early stage of the proceeding and the lenient standard to be employed when evaluating a motion to amend a complaint. During discovery, more details will be learned about the specific nature and frequency of the harassment. At that time, Gordon's claim may not withstand a motion for summary judgment. However, upon accepting as true all factual allegations in the amended complaint, and after drawing all reasonable inferences from those allegations in favor of plaintiff, the Court finds that plaintiff's allegations as to the pervasive and severe nature of the harassment are sufficient to raise her claim for relief above a speculative level.

deprivation of educational opportunities is established when the harassment has a "negative effect on plaintiff's ability to receive an education," including, "a drop in grades, missing school . . . or mental health issues requiring therapy or medication." *Nungesser v. Colombia Univ.*, 244 F. Supp. 3d 345, 367-68 (S.D.N.Y. 2017) (quotations omitted).

Here, Gordon alleges that the harassment caused her to suffer depression, symptoms of post traumatic stress disorder, and other mental health issues. She alleges that she required therapy to address these issues. Gordon states that she suffered a panic attack at school on one occasion as a result of her continued encounters with Dowdy. Gordon also alleges that her schedule was changed because of Dowdy's behavior. Also significantly, Gordon alleges that when she informed Principal Mann that she was uncomfortable being around Dowdy immediately after he was convicted of raping her, Mann placed Gordon in an in-school suspension room for the day. During that time, she attended no classes and her cell phone was taken from her. These allegations, considered in their totality, are sufficient to demonstrate loss of an educational benefit or opportunity. *See Hayut*, 352 F.3d at 747 (plaintiff's testimony that she felt humiliation and emotional distress, did not want to attend classes, and was unable to sleep was sufficient to create a triable issue of fact as to whether harassment interfered with her educational progress or opportunities); *Doe v. East Haven Bd. of Educ.*, 200 Fed. Appx at 48-49 (testimony that student victim cried every day after reporting the rape, because she was called names and saw her attacker at school, and that she was repeatedly absent from class, was enough for reasonable fact-finder to conclude that she was subjected to a

disparately hostile educational environment that deprived her of educational benefits and opportunities).[6]

For all of these reasons, the Court finds the Title IX claim in the amended complaint is not futile and should be permitted to proceed.[7]

*Equal Protection*

To state a Section 1983 Equal Protection harassment claim, a plaintiff must plead that (1) she was harassed by others based on a protected characteristic, such as sex, (2) the harassment was "actually known" to the defendant school officials, and (3) the defendant's "response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur." *DiStiso v. Cook*, 691 F.3d 226, 240-41 (2d Cir. 2012). The Second Circuit has further explained that, in establishing an Equal Protection claim, "it is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination," but instead a plaintiff must show that the

---

[6] Plaintiff states in her response papers, for the first time in this lawsuit, that her grades suffered during the relevant time period because she skipped class to avoid encounters with Dowdy. (Dkt. No. 34, pg. 12) Plaintiff also states that even though she participated in the Wheatfield High School graduation ceremony, she did not receive her diploma until a year later because she failed an exam in June of 2019. (*Id.*) The Court finds that the facts pled in the amended complaint are sufficient, by themselves, to state a claim for deprivation of an educational benefit or opportunity. However, these new allegations, together with any additional, relevant facts learned in discovery, could serve as additional support for plaintiff's allegation that her education suffered negative effects as a result of the harassment.

[7] Plaintiff argues that she has also sufficiently pled a claim of Title IX retaliation by alleging that she suffered adverse consequences as a result of reporting the harassment and bullying to school officials. Defendant counters that plaintiff fails to identify any adverse actions taken against her by the District or School Board. Because the Court has already found that plaintiff may proceed with her Title IX claim based on her allegations of peer-on-peer harassment, the Court does not address this argument. As discussed later, the Court recommends that plaintiff be permitted to proceed with some of her claims of First Amendment retaliation in violation of Section 1983. Since discovery will encompass plaintiff's allegations that she was retaliated against for reporting the sexual assault and harassment, the parties may later raise any relevant arguments as to whether plaintiff has presented a Title IX retaliation claim as a matter of law.

defendant's response to the discrimination was clearly unreasonable in light of the facts at hand. *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140-41 (2d Cir. 1999) ("deliberate indifference is not the same as action (or inaction) taken maliciously or sadistically for the very purpose of causing harm") (internal citations and quotations omitted).

Furthermore, Section 1983 Equal Protection claims that are based on a hostile educational environment theory, like the one Gordon asserts here, are governed by traditional Title VII "hostile environment" jurisprudence. *Hayut*, 352 F.3d at 744. Thus, a plaintiff must show that not only did they subjectively perceive the "environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that it was permeated with discriminatory intimidation, ridicule and insult…that [was] sufficiently severe or pervasive to alter the conditions of, in this case, the victim's educational environment." *Id.* (internal citations and quotations omitted). Making a "hostility" determination in the education context entails examining the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's academic performance." *Id.* at 745; *accord Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Finding the harassment "pervasive" means that the challenged incidents are "more than episodic; they must be sufficiently continuous and concerted." *Hayut*, 352 F.3d at 745. The Second Circuit has acknowledged that "generally speaking, this analysis is fact-specific and, therefore, as in this case, is best left for trial." *Id.* There also must be evidence that the alleged

discrimination was carried out because of sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).[8]

Defendant claims that plaintiff's Section 1983 Equal Protection harassment claims must be dismissed largely for the same reasons it advances in support of dismissal of her Title IX claims, namely that the harassment at issue was not severe and pervasive and that plaintiff did not suffer the loss of any educational benefits or opportunities as a result of the harassment. However, the Court already determined above that plaintiff has sufficiently pled that she suffered severe and pervasive harassment which resulted in the loss of certain educational benefits and opportunities. Once discovery is complete and a factual record is fully developed as to the details of the harassment and the consequences or effects suffered by plaintiff, defendant may elect to raise this argument again in a dispositive motion. However, at this stage of the litigation, plaintiff's allegations of a hostile educational environment are sufficient to state an Equal Protection harassment claim. *See A.S.*, 585 F. Supp. 3d at 278-79 (where complaint plausibly alleged a Title IX claim in that defendant was deliberately indifferent to reports of harassment directed at plaintiff, plaintiff's Equal Protection harassment claim was also permitted to proceed past the pleadings stage).[9]

---

[8] The Court finds this requirement has been satisfied. *See Doe v. Haven Bd. of Educ.*, 200 Fed. Appx. at 48 (concluding that name-calling in the context of a reported rape constitutes sexual harassment and that a reasonable fact-finder could conclude that, when a fourteen-year-old girl reports a rape and then is persistently subjected by other students to verbal abuse that reflects sex-based stereotypes, the harassment would not have occurred but for the girl's sex).
[9] Defendant submits that plaintiff fails to state a claim for disparate treatment in violation of the Equal Protection Clause because Gordon has not sufficiently alleged that she was treated differently than other similarly situated students. Because the Court finds that plaintiff has sufficiently alleged an Equal Protection Section 1983 claim based on a hostile education environment, it does not address this argument.

Because Gordon alleges her Section 1983 Equal Protection harassment claim against all individual defendants in their personal capacities, the Court must further address the sufficiency of plaintiff's allegations against each individual defendant.[10] It is well settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Plaintiff alleges that she informed Principal Mann about the rape and the pending criminal charges against Dowdy prior to the start of the 2018-2019 school year. However, Mann told her that Dowdy could continue to attend school without restrictions and that no punitive action would be taken against him. Gordon further alleges that despite presenting Mann with a court-mandated order of protection and asking for his assistance in keeping Dowdy away from her, Mann took no action at all to prevent Gordon from having to regularly encounter Dowdy at school. Gordon alleges that even when Mann learned that Dowdy had been convicted of rape, Mann still made no effort to protect her. Instead, Mann informed Gordon that Dowdy would still be permitted to regularly attend school and all school-related events, such as prom and graduation. Moreover, when Gordon told Mann that she was uncomfortable being around Gordon after he was convicted of raping her, Mann took Gordon out of classes for the day, placed her in the in-school suspension room, and took her phone away, while no action was taken with respect to Dowdy.

---

[10] The Court addresses plaintiff's Section 1983 Equal Protection *Monell* claim against the District, the School Board, and the individual defendants in their official capacities in a separate section of the Report and Recommendation.

Case 1:22-cv-00172-JLS-MJR    Document 47    Filed 08/22/23    Page 26 of 44

In addition, Gordon alleges that she showed both Principal Mann and Vice Principal White the abusive and threatening text messages that she regularly received from other students following the sexual assault, and that either Mann nor White did anything to stop or prevent the harassment. Gordon further alleges that she informed Guidance Counselor Graber about the rape and the pending criminal charges, and requested to change her schedule in order to avoid encountering Dowdy. Gordon alleges that her mother repeatedly contacted Superintendent Ljiljanich about the escalating harassment. However, the allegations in the amended complaint indicate that Graber and Ljiljanich did nothing to address Gordon's concerns. The Court finds that these allegations are minimally sufficient, at this early stage of the litigation, to state a claim for personal involvement by Mann, White, Graber, and Ljiljanich in the alleged violation of plaintiff's Equal Protection rights. *See Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107 (2d Cir. 2004) (Personal involvement in a Section 1983 deprivation can be shown by evidence that "the defendant exhibited deliberate indifference…by failing to act on information indicating that unconstitutional acts were occurring.").

The same cannot be said for the remaining individual defendants. Plaintiff alleges that after missing cheerleading practice because she was attending a meeting at the Niagara County District Attorney's office regarding the charges against Dowdy, Cheerleading Coach Hurchzermeier did not allow Gordon to cheerlead in a subsequent sporting event. Notably absent from the complaint are any allegations that Gordon ever informed Hurchzermeier about the alleged hostile educational environment. The complaint is also devoid of allegations that Hurchzermeier knew about the harassing or bullying conduct on the part of Dowdy or other students and did nothing to stop it or

26

prevent it. Thus, there are no allegations to support a claim that Hurchzermeier was deliberately indifferent to the harassment suffered by plaintiff. With respect to Guidance Counselor Peters, plaintiff alleges that when she informed Peters that she had been raped by Dowdy, Peters "immediately changed Gordon's class schedule (rather than Dowdy's) so that Gordon would not have to see Dowdy as often as she had in the past." (Dkt. No. 20-2, ¶ 58) Indeed, a valid question exists as to whether it was fair or appropriate to change Gordon's class schedule, as opposed to Dowdy's. However, this allegation, which is the only specific allegation against Peters, does not support a claim of deliberate indifference. Instead, the amended complaint alleges that when Peters was informed of the situation with Dowdy, he immediately undertook an action to try and prevent Gordon from having to continue to encounter Dowdy at school.

In sum, the Court concludes that plaintiff should be permitted to amend the complaint to add Section 1983 Equal Protection claims against Mann, White, Graber, and Ljiljanich in their personal capacities. The Court further concludes that plaintiff's motion to amend the complaint to add Section 1983 Equal Protection claims against Hurchzermeier and Peters in their personal capacities should be denied.

_First Amendment Retaliation_

To state a Section 1983 First Amendment retaliation claim, a plaintiff must allege that (1) her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." _Cox v. Warwick Valley Centr. Sch. Dist._, 654 F.3d 267, 272 (2d Cir. 2011). Generally, an "adverse action" is "conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights."

*Id.* at 273. "Under this objective standard, an adverse action must be more than *de minimis* to support a First Amendment retaliation claim." *See Vetrano v. Miller Place Union Sch. Dist.*, 369 F. Supp. 3d 462 (E.D.N.Y. Feb. 22, 2019). Recognizing that these standards are highly context specific, courts have applied them "in light of the special characteristics of the school environment." *Cox*, 654 F.3d at 273.

Here, there does not seem to be a dispute that Gordon engaged in protected activity when she reported both the sexual assault and the harassment to school officials. However, defendant argues that plaintiff fails to sufficiently allege that she suffered any adverse actions as a result of this protected speech, or that any purported adverse actions were undertaken in retaliation for engaging in protected conduct. Like her Equal Protection claim, plaintiff has alleged Section 1983 First Amendment retaliation claims against all individual defendants in their personal capacities.[11] In the context of plaintiff's First Amendment retaliation claims, the question of the personal involvement of the individual defendants will merge with the question of whether the adverse actions plaintiff alleges they took, and the motivation for those actions, plausibly state a retaliation claim. *A.S.*, 585 F. Supp. 3d at 271. As explained below, the Court finds that plaintiff has failed to plausibly state a retaliation claim against any of the individual defendants in their personal capacities, with the exception of Principal Mann.

Plaintiff alleges that immediately after Dowdy pled guilty to raping her, she went to Principal Mann and informed him that she was still uncomfortable being around Dowdy and that she was afraid of having contact with him after his conviction. In response, Mann

---

[11] The Court addresses plaintiff's First Amendment Retaliation *Monell* claim against the District, the School Board, and the individual defendants in their official capacities in a separate section of the Report and Recommendation.

placed Gordon in an in-school suspension room for the day, with no educational instruction. He also took her cell phone away from her. In contrast, Mann took no action at all as to Dowdy, who was apparently permitted, after his conviction, to continue to attend school with no restrictions whatsoever. Moreover, the Court cannot ignore that Mann's alleged actions with respect to Gordon, at the time of Dowdy's conviction, did not occur in a vacuum. Instead, they occurred after Mann had, allegedly, refused to enforce the restraining order, or take any other action to protect Gordon from harassment by Dowdy and others, throughout the entire school year. Indeed, the Court finds that Mann's alleged treatment of Gordon, in response to her complaints, was an adverse action which would deter a reasonable person of ordinary firmness from engaging in protected activity. Moreover, the action occurred at the same time that Gordon complained, as she had in the past, about encountering Dowdy at school, and after Gordon had made regular complaints, throughout the school year, regarding harassment by Dowdy and other students. *See A.S.*, 585 F. Supp. 3d at 269-70 (casual connection can be shown indirectly by demonstrating that the protected activity was followed closely by discriminatory treatment).[12]

The gravamen of plaintiff's allegations with respect to Counselor Graber, Vice Principal White, and Superintendent Ljiljanich are that she and/or her mother complained

---

[12] Defendant contends that Mann did not actually suspend plaintiff but simply put her in the in-school suspension room "to protect [her] from an uncomfortable situation of which he was made aware." First, it defies logic that if Principal Mann was interested in protecting plaintiff, he would have placed her, as opposed to the student just convicted of her rape, in an in-school suspension room for the day without educational instruction and without the ability to communicate with others, including friends or family. Moreover, Mann's motivation for the in-school suspension placement and the specific circumstances surrounding this incident are questions of fact. Plaintiff has stated a plausible claim of retaliation on its face. Should the evidence produced in discovery fail to support a claim of retaliation on the part of Mann, defendant can raise these arguments and more in a dispositive motion.

about the harassment and defendants did nothing to stop or prevent the conduct. While these allegations were enough to plausibly allege an Equal Protection claim based on deliberate indifference, the amended complaint does not allege that these individuals took any specific adverse or retaliatory actions against Gordon for reporting the harassment.[13] With respect to Counselor Peters, the amended complaint alleges that, upon learning of the assault and Gordon's concerns about Dowdy, Peters changed Gordon's class schedule "so that hopefully Gordon would not have to see Dowdy as often as she had in the past." Regardless of whether the change in Gordon's schedule constitutes an adverse action, there are no allegations to support a finding that the change was undertaken as retaliation for plaintiff's harassment complaints. Instead, the amended complaint itself states that Peters made the change specifically so that Gordon would no longer encounter Dowdy at school. Thus, there is no basis in the complaint to reasonably infer that the change in schedule was made in retaliation for Gordon's protected activity. *See Sutton v. Stony Brook University*, 18-CV-7434, 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021) ("a retaliation claim is not plausible where the pleading indicates that there was an alternative, non-retaliatory motive for defendant's conduct").

Gordon alleges that Coach Huchzermeier retaliated against her by forcing her to sit out from cheerleading during one school sporting event because Gordon missed cheerleading practice to meet with the Niagara County District Attorney's Office about the case against Dowdy. Regardless of Huchzermeier's motivation in this regard, the Court finds that preventing a student from participating in cheerleading during a single school

---

[13] To the extent that plaintiff rests her retaliation claim on the allegation that White told Camp that Gordon faked a panic attack, "this is the type of *de minimis* conduct that does not form the basis of a First amendment retaliation claim." *Morales v. Valley Stream Union Free Sch. Dist. 24*, 527 F. Supp. 3d 475 (E.D.N.Y. 2021).

athletic event does not constitute an adverse action sufficient to support a First Amendment retaliation claim. *See Vetrano*, 369 F. Supp. 3d at 462 (plaintiff student failed to establish that he suffered a viable adverse action in connection with his speech where plaintiff was barred from participating in a voluntary extracurricular activity).

In sum, the Court concludes that plaintiff should be permitted to amend the complaint to add a Section 1983 First Amendment retaliation claim against Mann in his personal capacity. The Court further concludes that plaintiff's motion to amend the complaint to add Section 1983 First Amendment retaliation claims against the remaining individual defendants in their personal capacities should be denied.

*Monell Claims*

To state a Section 1983 claim against the District, the School Board, and the individual defendants in their official capacities, plaintiff must plead the following three elements "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Agosto v. New York City Dept. of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020).[14] "A school district's liability under *Monell* may be based on any of the following three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final

---

[14] A Section 1983 claim against an individual in his or her official capacity is treated as a claim against the municipality that employs the individual. *Beckwith v. Erie Cnty. Water Auth.*, 413 F. Supp. 2d 214, 224-25 (W.D.N.Y. 2006). Where, like in this case, a plaintiff names both a municipal entity and various employees or officials in their official capacities, district courts have consistently dismissed the official capacity claims as redundant. *See Philips v. Cty. Of Orange*, 894 F. Supp. 2d 345, 385 n. 35 (S.D.N.Y. 2012). Thus, Gordon's Section 1983 official capacity claims against the individuals defendants should be dismissed.

policymaker.'" *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424-25 (2d Cir. 2004).

The Court finds that, at this preliminary stage of the litigation, plaintiff has sufficiently alleged that district employees were acting pursuant to an official policy, custom or practice which caused Gordon to be deprived of a constitutional right. Gordon alleges that her mother told Principal Mann, at the start of the school year, that Dowdy was charged with Gordon's rape and that an order of protection was issued by Judge Restaino prohibiting Dowdy from having any contact with Gordon. In response, Mann told Camp that Dowdy could not be prevented from attending school; that the school could not take any action which would be considered punitive; and that Dowdy would be allowed to participate in all school activities and functions without restriction. Gordon alleges that, in accordance with these representations by Dowdy, the District took no action to enforce the order of protection, even after Gordon complained that Dowdy and others were harassing her. Camp contacted Mann again after Dowdy's conviction and again asked what the school would do to protect Gordon and/or enforce the order or protection. Mann allegedly informed Camp that, after speaking with legal counsel, it was determined that Dowdy would still be able to attend all school functions, including prom and graduation, again without restriction. In sum, plaintiff alleges that, when informed of student-on-student sexual assault and/or an order of protection against a student as a result of a sexual assault, defendants' official policy was (1) to allow the individual charged with the crime to continue to attend school and all school events or extracurricular activities with no restrictions and (2) to take no affirmative steps to enforce the order of protective. *See Turpin v. Milet*, 619 F.2d 196, 200 (2d Cir. 1980) (a municipal policy may be inferred from

the informal acts or omissions of supervisory municipal employes). Gordon further alleges that this policy forced her to regularly encounter Dowdy and to face various other forms of harassment and bullying, in violation of her constitutional rights.[15]

Furthermore, even if plaintiff's allegations are insufficient to state a *Monell* claim on the basis of an official policy, custom or practice, the Court finds that plaintiff has still sufficiently pled a *Monell* claim on the basis of deliberate indifference. A plaintiff may also plead a *Monell* claim by alleging that their constitutional injury was the result of a failure to train or supervise that amounts to deliberate indifference to the rights of those with whom the municipality's employees interact. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); accord *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Here, plaintiff alleges that, at all times relevant to this action, the District and the School Board had no policies in place as to how administrators, teachers, and staff were to handle allegations of peer-on-peer sexual assault, sexual harassment, and gender-based bullying. It is further alleged that the District and the School Board failed to train employees in how to investigate, handle, or prevent complaints of discrimination and harassment, and failed to train staff in how to prevent retaliation against students for complaining about these types of behaviors. *See DS v. Rochester City School Dist.*, 6:19-CV-6528, 2022 U.S. Dist. LEXIS 39917 (W.D.N.Y. March 7, 2022) (motion to dismiss plaintiffs' *Monell* claim for failure to train denied where it was alleged that student plaintiff was subjected to repeated

---

[15] Questions as to whether the official policy or custom alleged by plaintiff actually existed; who promulgated or implemented the policy; and whether the policy was the actual cause of any purported violations of Gordon's constitutional rights cannot be determined at this stage of the lawsuit. Indeed, Gordon will need to provide more specific evidentiary details to support this claim as the case proceeds. Here, the Court has only determined that the allegations are sufficient to raise Gordon's *Monell* claim above a speculative level, such that the amendment to the complaint should be permitted.

race-based harassment by her peers and the school district employees and supervisors were deliberately indifferent to the harassment and bullying and took no adequate steps to curtail it).

In addition to alleging a failure to train or supervise, a plaintiff asserting a *Monell* claim based on deliberate indifference must show: (1) that a policymaker knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the type of choice that training will make less difficult, *or* that there is a history of employees mishandling the situation; and (3) the wrong choice by the employee will frequently cause the deprivation of a constitutional right. *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (emphasis added). Gordon's amended complaint satisfies these requirements. From the facts alleged in the amended complaint, it can be inferred that the District and the School Board knew that school employees would confront complaints of sexual harassment and gender-based bullying which they would need to investigate and resolve; that training would assist employees in investigating and resolving these complaints; that improper handling of the complaints could result in a violation of a student's Equal Protection and First Amendment rights; and that the District and the School Board failed to properly train employees in this regard. The Court finds these allegations sufficient to state a deliberate indifference *Monell* claim. *See A.S.*, 585 F. Supp. at 282 (denying motion to dismiss *Monell* claim where plaintiff alleged that school district failed to train staff about its harassment, discrimination and retaliation policies and failed to train staff in investigating complaints of discrimination and retaliation).

Defendant argues that plaintiff's *Monell* claim fails because she does not allege a "pattern of similar constitutional violations" by the District or School Board. The Court

disagrees. First, because Gordon alleges that the District and School Board knew that employees were likely to be confronted with complaints of peer-on-peer sexual harassment and gender-based discrimination, and that appropriate training could prevent the mishandling of these types of complaints, Gordon is not necessarily required to allege other instances of misconduct. Moreover, Gordon has, in fact, alleged other instances of misconduct. The amended complaint specifically alleges that there were at least three other occasions where employees of the District similarly mishandled credible allegations of serious, severe, and persistent sexual assault and harassment. While the amended complaint may not provide "overwhelming factual support" as to the details of the other alleged constitutional violations, the allegations here are sufficient to survive dismissal at this early stage. *Benacquista v. Spratt*, 217 F. Supp. 3d 588 (N.D.N.Y. 2016).[16]

---

[16] The Court notes that on June 23, 2021, the Attorney General of New York sued the District alleging Title IX violations and negligent supervision under New York common law. *New York v. Niagara Wheatfield Cent. Sch. Dist.*, 21-CV-759, 2022 U.S. Dist. LEXIS 86468 (W.D.N.Y. May 11, 2022). This lawsuit was based on the District's treatment of Gordon in response to her reports of sexual assault and harassment, as well as the District's separate handling of allegations of sexual assault and harassment by three other students. *Id.* at *2-3. The suit was ultimately dismissed for lack of standing by the Attorney General. *Id.* However, the Court notes that the complaint in that action alleged the following: "[o]ver the past few years, [the District] has been notified of more than thirty additional incidents of sexual assault, harassment, or gender-based bullying, yet has not created a written safety plan or documented any steps taken to ensure the safety of any students. [The District] never responded to an offer from the Rape Crisis Program at the YMCA…to provide educational programming…[which] is presented at every other school district in Niagara County except NWCSD." *Id.* at *6. Plaintiff urges the Court to take judicial notice of the allegations in the complaint filed in *New York v. Niagara Wheatfield*. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings in another lawsuit). Indeed, the Court acknowledges that these are allegations, not proven facts, and that they were raised in the context of a different lawsuit. However, the existence of these very specific allegations, albeit in a separate complaint, distinguishes this matter from the cases cited by defendant, where *Monell* claims were dismissed because they wholly failed to allege any specific factual details regarding other similar constitutional violations. Moreover, dismissing the instant complaint with an instruction that plaintiff include more detail as to the other allegedly mishandled complaints would be inefficient. It would also be a waste of the parties' time and resources, which is better utilized in litigating this action beyond the complaint stage.

For these reasons, the Court finds that the *Monell* claims against the District and the School Board may proceed.

*Procedural Due Process*

The Due Process clause protects individuals from being deprived of property or liberty without due process of law. *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir. 1991). "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 (2d Cir. 1993). A procedural due process claim requires proof of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dept*, 692 F.3d 202, 218 (2d Cir. 2012). Students have a "property interest in a public education protected by the Fourteenth Amendment…which entitle[s them] to attend the public schools maintained in the district in which [they] reside[]." *S.C. v. Monroe Woodbury Cent. School Dist.*, 11-CV-1672, 2012 WL 2940020, at *6 (S.D.N.Y. July 18, 2012); *accord* N.Y. Educ. L. § 3202(1).

In the amended complaint, plaintiff alleges that defendants violated her Fourteenth Amendment rights when they "deprived [Gordon] of the class schedule of her choosing, forced [Gordon] to attend *de-facto* in-school suspension, and precluded [Gordon] from fully participating in extracurricular activities with no opportunity to be heard or to challenge these deprivations of her rights." (Dkt. No. 20-2, ¶ 154) Courts in this Circuit have held that when a school district does not suspend a student or otherwise prevent them from attending, there has been no procedural due process violation. *See Saggio v. Sprady*, 475 F. Supp. 2d 203, 210 (E.D.N.Y. 2007) ("[T]he District did not exclude her

36

from attending school. Thus, it cannot be said that the District infringed on her right to an education."); *S.C. v. Monroe Woodbury Cent. School Dist.*, 11-CV-1672, 2012 U.S. Dist. LEXIS 100622 (S.D.N.Y. July 18, 2012) (where defendants did not suspend plaintiff from school or otherwise prevent him from attending school in the district, plaintiff was not deprived of a property interest). Based on this analysis, Gordon's claims that her class scheduled was changed and that she was precluded from participating in cheerleading on one occasion are insufficient to allege a violation of her procedural due process rights. *See e.g., Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69 (W.D.N.Y. 1997) ("[I]t is only when a student is excluded from the entire educational process that due process must be afforded. His exclusion from a particular course, event or activity is of no constitutional import."); *Immaculate Heart Cent. Sch. V. New York State Pub. High School League*, 797 F. Supp. 2d 204, 217 (N.D.N.Y. 2011) ("Participation in interscholastic athletics is not protected by due process.").

With respect to plaintiff's allegations that she was denied procedural due process when placed in the in-school suspension room for a day, defendant points to *A.F. v. Kings Park Cent. Sch. Dist.*, which held that "an in-school suspension of one day is a *de minimis* deprivation of a student's property rights, as it does not interfere with a student's continued presence at school or their continued instruction." 341 F. Supp. 3d 188, 196 (E.D.N.Y. 2018). However, a closer look at the facts and reasoning in *A.F. v. Kings Park Cent. Sch. Dist.* is required here. In that case, the Eastern District of New York Court recognized that the Supreme Court has held that a period of removal from classes, of less than 10 days, is sufficient to present a procedural due process claim. *Id.; accord Gross v. Lopez*, 419 U.S. 565 (1975) The Court went on to find that even a *one-day out-*

*of-school suspension* was sufficient to survive a motion to dismiss with respect to a procedural due process claim. 341 F. Supp. at 196. The Court reasoned that "[a]lthough the [p]laintiffs' one-day suspensions fell below the ten-day suspensions contemplated in *Gross*, they were more onerous than a one day in-school suspension, as they required the exclusion from school premises *and the students did not receive instruction for the day.*" *Id.* (emphasis added).

The Court acknowledges it to be a close call as to whether Gordon's one-day placement in the in-school suspension room constituted the deprivation of a property right. However, the Court will not recommend dismissal of the claim at this most preliminary stage of the lawsuit. Gordon alleges that her placement in in-school suspension had no educational or disciplinary basis, but was instead undertaken purely as retaliation for her complaints about harassment and bullying by Dowdy and other students. Moreover, Gordon alleges that her phone was taken away and that she received no instruction during that time, making her situation akin to the one-day out-of-school suspension that the Court in *A.F. v. Kings Park Cent. Sch. Dist.* found to be more than a *de minimis* deprivation of a student's property right. Discovery will reveal further details about the incident, including Mann's purported motivation for placing Gordon in the in-school suspension room, the specific circumstances of the placement, and whether Gordon received any instruction during that time. It may well be the case, once additional facts are developed, that Gordon's time in in-school suspension does not constitute deprivation of a property right. However, at this early stage of the litigation and without the benefit of discovery, the Court does not reach this conclusion as a matter of law.

Defendant further argues that even if plaintiff has plausibly alleged that she was deprived of a property right under the Fourteenth Amendment as a result of the in-school suspension, the availability of post-deprivation remedies, such as the ability to commence an Article 78 proceeding, precludes her claim. However, plaintiff contends that because removing a student from class is a common scenario, as opposed to a random and unauthorized act, she was entitled to pre-deprivation due process. *See Velez v. Levy*, 401 F.3d 75, 91 (2d Cir. 2005) ("due process dictates that persons...receive..[a] hearing prior to the deprivation of an interest, and it is only where the state is effectively unable to anticipate and prevent a random deprivation of an interest, [that] post deprivation remedies must satisfy due process."); *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) (adequate post-deprivation remedy is defense to § 1983 claim based on "random and unauthorized" deprivation but not "where the deprivation complained of results from the operation of established state procedures"). The availability of post-deprivation remedies may well entitle defendant to summary judgment with respect to Gordon's procedural due process claim. However, at this early stage in the proceeding, when all inferences are to be made in favor of the plaintiff and no factual discovery has been done, the Court is unable to make this finding as a matter of law. Thus, Gordon should be permitted to amend her complaint to add a procedural due process claim.[17]

---

[17] There are no allegations in the complaint that any of the individual defendants, with the exception of Principal Mann, was personally involved in the decision to place Gordon in the in-school suspension room for the day. Further, it is reasonable to infer, from the amended complaint, that the events giving rise to placement occurred as a result of the District and the School Board's alleged failure to properly train or supervise employees, including Mann, in the handling of complaints of sexual assault, harassment, and bullying. *See Wray* v, 490 F.3d at 196 (deliberate indifference involves the conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights). Thus, the Court recommends that the procedural due process claim be permitted to proceed against the District, the School Board, and Mann, but denied with respect to all of the other individual defendants.

<u>Substantive Due Process</u>

Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *C.T. v. Valley Stream Union Free School District*, 201 F. Supp. 3d 307, 318-19 (E.D.N.Y. 2016); *quoting Pena v. DePrisco*, 432 F. 3d 98, 112 (2d Cir. 2005) (internal citations omitted). It is well settled that plaintiffs may only allege cognizable substantive due process claims for extreme or egregious conduct which can be fairly viewed as so "brutal" and "offensive to human dignity" that it shocks the conscience. *Johnson v. Glick*, 481 F.2d 1028, 1033 n.6 (2d Cir. 1973); *citing Rochin v. California*, 342 U.S. 165, 172 (1952). Thus, the Second Circuit has explained that "substantive due process protects against governmental action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted).

In *Smith v. Guilford Bd. of Educ.*, the Second Circuit concluded that "failure to respond to the harassing and bullying to which [the student] was subjected . . ., while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience." 226 Fed. Appx. 58, 62 (2007). District courts in this Circuit have held similarly. *See e.g., Moskowitz v. Great Neck Union Free School District*, 20-CV-1659, 2021 WL 4268138, at *13-14 (E.D.N.Y. 2021) (collecting cases where courts have found that a school district's failure to sufficiently

address harassment or bullying did not violate substantive due process); *Saggio v. Sprady*, 475 F. Supp. 2d 203, 209 (E.D.N.Y. 2007) ("the argument that a school district can violate substantive due process by not protecting students from harassment has been generally rejected"); *Dayes v. Watertown*, 5:20-CV-964, 2021 U.S. Dist. LEXIS 183933 (N.D.N.Y. Sept. 27, 2021) (dismissing substantive due process claim based on allegations that defendant district failed to have sufficient policies, procedures, training and supervision in place to prevent racial discrimination and harassment); *Drain v. Freeport Union Free Sch. Dist.*, 14-CV-1959, 2015 U.S. Dist. LEXIS 28512 (E.D.N.Y. Mar. 9, 2015) ("[A] school's failure to remedy peer-on-peer bullying and harassment does not rise to the level of "shock the conscience.").

Here, plaintiff's substantive due process claim is based on her allegations that defendant's failure to protect her from bullying and harassment by Dowdy and others deprived her of the right to "access educational opportunities and activities, the right to an educational environment free from sexual harassment, and the right to speak about the deprivation of those rights or any other matter." Applying the standard just discussed, defendants' failure to protect plaintiff from sexual harassment and gender-based bullying, while highly unfortunate and sufficient to state a claim under Title IX and the Equal Protection Clause, did not "transgress[] the outer limit of government action", *Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421 (N.D.N.Y. 2005), so as to shock the conscience and rise to the level of a substantive due process violation. Therefore, it is recommended that plaintiff's request to amend the complaint to add a substantive due process claim be denied.

## CONCLUSION

For the foregoing reasons, it is recommended that plaintiff's motion to amend the complaint be granted in part and denied in part. (Dkt. No. 20) Specifically, it is recommended that plaintiff be permitted to amend the complaint to include (1) Title IX claims against the District and the School Board; (2) Equal Protection Section 1983 claims against the District and the School Board, under *Monell*, as well as against defendants Mann, Graber, White, and Ljiljanich in their personal capacities; (3) First Amendment Section 1983 claims against the District and the School Board, under *Monell*, as well as against defendant Mann in his personal capacity; and (4) procedural due process claims against the District, the School Board, and defendant Mann in his personal capacity. It is recommended that plaintiff's motion for leave to amend the complaint otherwise be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

Dated:       August 21, 2023
             Buffalo, New York


                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

43